IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KAREN R. HIRLSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:17-cv-4699 |
| | ) |
| COSTCO WHOLESALE CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

Plaintiff Karen R. Hirlston, by counsel, for her Complaint for Damages and Demand for Trial by Jury, states as follows:

**I. INTRODUCTION**

1. This is an action brought by Karen R. Hirlston ("Ms. Hirlston") against Defendant Costco Wholesale Corporation, between which parties there is an employment relationship. Defendant violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), by discriminating against Ms. Hirlston on the basis of her disabilities and retaliating against Ms. Hirlston after she requested accommodations. Defendant acted deliberately and violated Ms. Hirlston's civil rights because of her disabilities.

**II. EEOC COMPLIANCE**

2. Ms. Hirlston exhausted all of the administrative proceedings available to her by timely filing a Charge of Discrimination on the basis of disability with the U.S. Equal Employment Opportunity Commission ("EEOC").

3. Ms. Hirlston filed her initial Charge of Discrimination with the EEOC on or about March 27, 2015. A copy of Ms. Hirlston's Charge is attached hereto and marked as Exhibit 1.

4. Ms. Hirlston's Charge was timely filed in compliance with 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5.

5. Ms. Hirlston received a Dismissal and Notice of Rights of her initial Charge of Discrimination on September 22, 2017, which was dated September 21, 2017. A true and accurate copy of the initial Dismissal and Notice of Rights is attached hereto and marked as Exhibit 2.

6. Ms. Hirlston's Complaint was timely filed within ninety (90) days of receipt by Ms. Hirlston of the Dismissal and Notice of Rights.

### III. JURISDICTION

7. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343. This action is authorized and instituted pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*.

8. Jurisdiction to grant injunctive and declaratory equitable relief as well as to award damages is invoked pursuant to 42 U.S.C. § 12117.

9. The alleged discriminatory acts were committed within the jurisdiction of the United States District Court for the Southern District of Indiana, Indianapolis Division.

### IV. VENUE

10. Ms. Hirlston is a resident of Marion County in the State of Indiana, and is a citizen of the United States of America.

11. Defendant Costco Wholesale Corporation's headquarters are located in Issaquah, King County, Washington.

12. The discriminatory acts under the ADA alleged below arose in Marion County, Indiana. Marion County is located in the Southern District of Indiana; thus, this cause of action is

properly venued in the Southern District of Indiana under 28 U.S.C. § 1391(b), which allows for an action to be brought in the district where the Defendant resides or in which the cause of action arose.

## V. PLAINTIFF

13. Ms. Hirlston is a citizen of the United States, and is currently, as she was during all times relevant to this Complaint, a resident of Marion County in the State of Indiana.

14. Ms. Hirlston resides in Indianapolis, Indiana.

15. Ms. Hirlston is a person entitled to protection under the ADA based on her disabilities.

## VI. DEFENDANT

16. Costco Wholesale Corporation is located at 999 Lake Drive, Issaquah, Washington 98027.

17. Costco Wholesale Corporation does business in the State of Indiana.

18. Ms. Hirlston was employed at Costco Wholesale Corporation located at 6110 E. 86th Street, Indianapolis, Indiana 46250.

19. At all times relevant to this action, Defendant employed Ms. Hirlston.

## VII. STATEMENT OF FACTS

20. Ms. Hirlston was hired in December of 2009 as an Optician at Costco at Store #347 on Michigan Road in Indianapolis, Indiana.

21. In August of 2010, Ms. Hirlston was promoted to the Optical Manager for Costco located on 86th Street in Indianapolis, Indiana (Store #346).

22. Ms. Hirlston was highly successful in her position as the Optical Manager at Costco.

23. Ms. Hirlston and her Optical Department were certified as "Elite" two (2) times in the previous five (5) years – most recently less than a month before she was placed on a forced leave of absence.

24. Moreover, Ms. Hirlston's Optical Department was ranked in the top ten (10) in the eastern part of the United States for productivity.

25. Her Optical Department also had ten-percent (10%) growth for the last fiscal year she was there.

26. Ms. Hirlston suffers from spinal arthritis and stenosis, slipped discs and disc desiccation.

27. Her spinal ailments were diagnosed in 2011.

28. She has also suffered from fibromyalgia since 1995.

29. Costco was aware of Ms. Hirlston's disabilities as she submitted a medical note from her physician, Rachael Bowles, M.D., which stated that Ms. Hirlston needed to sit in a chair with a back because of her chronic back pain.

30. Ms. Hirlston's request for an accommodation of a chair with a back was precipitated by Costco's elimination of chairs with backs in the Optical Department that Costco replaced with stools.

31. Dr. Bowles further stated that Ms. Hirlston could not sit on a stool because of Ms. Hirlston's disabilities.

32. Dr. Bowles noted that this would be a permanent restriction.

33. Costco was also aware of Ms. Hirlston's disabilities as she used a quad cane to walk.

34. Based on Dr. Bowles' medical note, Ms. Hirlston requested an accommodation from Costco.

4

35. Specifically, Ms. Hirlston requested as an accommodation a chair with a back for her to use in the Optical Department so she could perform the essential functions of her job.

36. Although Ms. Hirlston submitted her request for a chair with a back on December 2, 2014, Costco did not provide the accommodation to her until July of 2015 – more than seven (7) months after she requested it.

37. Costco provided absolutely no explanation as to why it took seven (7) months to obtain a chair with a back for Ms. Hirlston.

38. On May 13, 2015, Costco announced a retrofitting of the Optical Department to remodel the counters and raise all monitors to the upper countertops, which would eliminate all seated workstations.

39. When Ms. Hirlston learned of the installation of the privacy screens and the options for the retrofit of the new monitors in May of 2015, she immediately spoke to Chris Albury, the Admin Manager, and requested an accommodation.

40. Mr. Albury agreed that Ms. Hirlston could not work under the conditions outlined in the Memorandum and further agreed that an accommodation would need to be made.

41. In July of 2015, Ms. Hirlston was told by the Regional Optical Manager at Costco, Scott Francis, that Costco would not provide her with an accommodation.

42. Mr. Scott did not explain why Costco refused to accommodate Ms. Hirlston and did not offer her an alternative accommodation.

43. Mr. Francis failed to advise Ms. Hirlston of her legal rights and options for requesting accommodations for Ms. Hirlston's disabilities.

44. The Assistant General Manager, Charise McDonald, also told Ms. Hirlston in July of 2015 that Costco would not accommodate Ms. Hirlston.

5

45. Ms. McDonald advised Ms. Hirlston that Ms. McDonald could not assist Ms. Hirlston as Ms. McDonald's direction came from "Corporate."

46. Ms. McDonald also failed to advise Ms. Hirlston of her legal rights and options for requesting accommodations for Ms. Hirlston's disabilities.

47. Ms. Hirlston notified Costco's Corporate Human Resources Department in August of 2015 that she was being refused an accommodation.

48. Ms. Hirlston was told then that Costco could and would make an accommodation for her.

49. It was not until she spoke to someone in the Human Resources Department that she learned about the procedures for submitting a written request for a reasonable accommodation that would trigger a Job Assessment with Integrated Leave.

50. Both Mr. Francis and Ms. McDonald failed to advise Ms. Hirlston of these procedures.

51. Ms. Hirlston provided her restrictions to Mike Donaldson, the General Manager for Store #346, and again requested an accommodation on September 26, 2015.

52. In mid-October of 2015 – the day before Ms. Hirlston was scheduled to be out on vacation, Frances Parisi from Rehab West, contacted her and asked her to participate in a conference call with Ms. Parisi, Mr. Donaldson, and Integrated Leave to discuss the restrictions submitted by Dr. Bowles.

53. On November 3, 2015, Ms. Hirlston met with Mr. Donaldson, Ms. Parisi, Julie Davidson, the Integrated Leave and Accommodation Specialist, and Julie Frazier, the Integrated Leave OPS Manager, to discuss her requested reasonable accommodations.

54. Although Ms. Hirlston offered several requested accommodations, Costco refused to provide any of these to her.

55. For example, Ms. Hirlston suggested that pursuant to a Memorandum dated May 13, 2015, a drop-in box for the computer monitor could be installed on the lower countertop, which is desk height, so concerns about exposure of confidential information could be addressed.

56. This would allow Ms. Hirlston to sit down as needed, but it would also protect confidential information.

57. Costco refused this requested, reasonable accommodation.

58. Costco asked Ms. Hirlston to suggest another way to sit other than in a chair with a back on it, but Ms. Hirlston was not aware of any other possible accommodations.

59. Costco also did not offer another type of accommodation for Ms. Hirlston or seek input from medical professionals.

60. Ms. Hirlston also suggested the use of a "grabber" so she could grab glasses or contacts.

61. One of Ms. Hirlston's previous supervisors at a previous employer used a "grabber" with great success.

62. Costco expressed concerns that Ms. Hirlston would have to bend or stoop to grab paperwork, but she assured Mr. Donaldson, Ms. Parisi, Ms. Davidson and Ms. Frazier that all paperwork was not located down low and she would be able to easily access the paperwork.

63. Costco initially agreed to research the use of a "grabber," but concluded the same day to not allow the use of a "grabber" without conducting any research.

64. Although Ms. Hirlston offered several reasonable accommodations, Costco unreasonably denied each requested accommodation and failed to seek alternative accommodations or seek input from medical professionals about other possible accommodations.

65. Instead, according to a letter Ms. Hirlston received from Mr. Donaldson dated November 4, 2015, Costco placed her "on a leave of absence both as a reasonable accommodation and to provide us the opportunity to further explore other potential positions for possible reassignment."

66. While on leave, Ms. Hirlston only received payment of her full salary for seven (7) weeks.

67. Following these seven (7) weeks, Ms. Hirlston was paid only a small portion of her salary.

68. On April 13, 2016, Ms. Hirlston met with William Kaufman, the Warehouse Manager for a new Costco store on the south side of Indianapolis (Store #1227), as well as other individuals from Integrated Leave.

69. She discussed with Mr. Kaufman, Ms. Davidson and Hillary Dirks from Integrated Leave regarding a position at Store #1227 as a hearing aid assistant/apprentice.

70. Although she was supposed to receive the notes from the meeting, she never did. Mr. Kaufman also never received copies of the notes from the meeting.

71. Beginning in January of 2016, Ms. Hirlston repeatedly contacted Costco for information on any position at Store #1227, and, specifically, the position of hearing aid assistant/apprentice, but she received no response.

72. Ms. Hirlston only received the run-around from Ms. Dirks regarding the lack of notes, the need for a release (which had never been discussed) and more timelines that were never met.

73. On June 3, 2016, Ms. Hirlston contacted Integrated Leave as per the emailed instructions to express interest in two hearing aid positions that had been posted at Store #347.

74. Ms. Hirlston was asked by Integrated Leave for clarification.

8

75. Ms. Hirlston responded on June 6, 2016, explaining the background of her situation and what had transpired with the Job Assessment (JA) meeting about the hearing aid position and that according to that meeting she was qualified to do those jobs.

76. Ms. Hirlston received a standard form letter response, stating she would hear from Integrated Leave within two (2) weeks.

77. Ms. Hirlston did not hear anything for several months.

78. On October 10, 2016 – nearly one (1) year after being placed on administrative leave – Ms. Hirlston was offered a position at Store #1227 (South Indianapolis Warehouse) as a Non-Licensed Hearing Aid Attendant.

79. Ms. Hirlston accepted this position on October 17, 2016 as this was the only position Costco had offered and she needed other employment.

80. This position, however, pays significantly less than Ms. Hirlston's previous management position, and has fewer benefits.

81. Ms. Hirlston was placed at a significant financial disadvantage as a result of Costco's refusal to accommodate her.

82. Ms. Hirlston lost a significant amount of income during her forced leave of absence, and she is now making significantly less in her new position.

83. Moreover, Ms. Hirlston was forced to pay more than $1,400.00 per month for COBRA insurance premiums, and she paid out-of-pocket for medications and physician visits during the lapse between coverage and COBRA.

84. Ms. Hirlston was also without income for more than a month while her short-term disability claim was being reviewed, and then she went another month without income while her long-term disability claim was being reviewed.

85. This all caused extreme financial and emotional distress.

86. As a direct and proximate result of the foregoing conduct:

   (a) Ms. Hirlston incurred and continues to incur a substantial loss of past, present and future income;

   (b) Ms. Hirlston has suffered damage to her career;

   (c) Ms. Hirlston has suffered mental and physical anguish; and

   (e) Ms. Hirlston has incurred additional financial losses, including the costs associated with invoking her federally protected civil rights.

## VIII. STATEMENT OF CLAIMS

### COUNT I
(*Discrimination under the Americans with Disabilities Act,*
*42 U.S.C. § 12101 et seq., as amended by the ADA Amendments Act of 2008.*)

87. Ms. Hirlston incorporates the allegations of paragraphs 1 through 86 above and, in addition, states that Defendant's acts and omissions in this matter discriminated against her because of her disabilities, her record of disabilities, and/or being regarded as having a disability in violation of the ADA.

88. Defendant is engaged in an industry affecting commerce.

89. Defendant has employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding year.

90. Defendant satisfies the definition of an "employer" within the meaning of Section 101 of the ADA, 42 U.S.C. § 12111(5)(a).

91. Ms. Hirlston at all times relevant herein had the requisite skill, experience, education and other job-related requirements of the position she held with Defendant.

92. Consequently, Ms. Hirlston is a qualified individual with a disability under 42 U.S.C. § 12111(8).

93. Ms. Hirlston is disabled within the meaning of the ADA; that is, she has a physical impairment, has a record of, and/or is regarded as having a physical impairment that substantially limits a major life activity, including but not limited to, caring for herself, sleeping, manual tasks, lifting, interacting with others, and working. Specifically, Ms. Hirlston suffers from spinal arthritis and stenosis, slipped discs and disc desiccation. Her spinal ailments were diagnosed in 2011. She has also suffered from fibromyalgia since 1995.

94. At all times relevant herein, Costco was aware of Ms. Hirlston's disabilities and her need for reasonable accommodations.

95. Ms. Hirlston requested accommodations from Costco orally and in writing on multiple occasions.

96. Defendant intentionally discriminated against Ms. Hirlston based on her disabilities when it failed to reasonably accommodate Ms. Hirlston by refusing to allow Ms. Hirlston to sit in a chair with a back, to use a "grabber" and/or refusing to install a drop-in monitor for Ms. Hirlston.

97. Furthermore, Ms. Hirlston's disabilities were the motivating factor in Costco's decision to place Ms. Hirlston on administrative leave.

98. Defendant's failure to reasonably accommodate Ms. Hirlston and its imposition of discipline/administrative leave against her were discriminatory actions taken against her because of her disabilities in violation of the ADA.

99. The reasons given for Ms. Hirlston's discipline/administrative leave are a pretext for disability discrimination.

100. Other employees without disabilities were treated more favorably than Ms. Hirlston.

11

101. As a result of Defendant's discriminatory acts and omissions, Ms. Hirlston has suffered and will continue to suffer monetary damages and damages for mental anguish unless and until the Court grants relief.

## COUNT II
*(Retaliation under the Americans with Disabilities Act,*
*42 U.S.C. § 12101 et seq., as amended by the ADA Amendments Act of 2008.)*

102. Ms. Hirlston incorporates the allegations of paragraphs 1 through 101 above and, in addition, states that Defendant's conduct in this matter constituted retaliation against Ms. Hirlston following her requests for accommodation under the ADA.

103. Beginning in December 2014, Ms. Hirlston requested reasonable accommodations from Defendant because of her disabilities.

104. When Defendant failed to reasonably accommodate Ms. Hirlston, she advised her supervisor and requested further accommodations; this was protected activity.

105. Although one (1) of her requests for accommodation of her disabilities was partially granted (after several months), Costco refused to provide Ms. Hirlston with sufficient reasonable accommodations to allow her to continue to perform her essential job duties.

106. Defendant thus made it difficult for Ms. Hirlston to perform her job, because it refused to adequately accommodate her disabilities.

107. Because Ms. Hirlston requested accommodations under the ADA, Defendant unnecessarily placed Ms. Hirlston on administrative leave and reduced her pay. This was an adverse action by Defendant.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Karen R. Hirlston prays for a judgment in her favor against Defendant, and prays that the following relief be awarded:

(a)     Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in disability discrimination and any other employment practice, which discriminate on the basis of disability, and from engaging in retaliation.

(b)     Order Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for disabled individuals, and which eradicate the effects of its past and present unlawful employment practices.

(c)     Order Defendant to make whole Ms. Hirlston by providing appropriate back pay and front pay for actual damages with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to Ms. Hirlston's pecuniary losses.

(d)     Order Defendant to make whole Ms. Hirlston by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including medical expenses, in amounts to be determined at trial.

(e)     Order Defendant to make whole Ms. Hirlston by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life and humiliation, in amounts to be determined at trial.

(f)     Order Defendant to pay Ms. Hirlston punitive damages for its malicious and/or reckless conduct described above, in amounts to be determined at trial.

(g)     Order Defendant to pay Ms. Hirlston her special damages, in amounts to be determined at trial.

(h) Order Defendant to pay damages to Ms. Hirlston for any and all injuries to her career, in amounts to be determined at trial.

(i) Order Defendant to place Ms. Hirlston in an appropriate position, at an equal or improved salary as her optical manager position.

(j) Award Ms. Hirlston the costs of this action including reasonable attorneys' fees and any such further relief as the Court may deem just, proper and equitable.

(k) Grant such further relief as the Court deems necessary and proper in the public interest.

## X.  RESERVATION OF RIGHTS

Pursuant to the rules of pleading and practice, Plaintiff reserves the right to assert additional violations of federal and state law.

## XI.  JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

*s/ Jamie A. Maddox*
Kevin W. Betz, Atty. No. 14188-82
Jamie A. Maddox, Atty. No. 26522-49
*Attorneys for Plaintiff Karen R. Hirlston*

BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, Indiana 46204
Office: (317) 687-2222
Fax: (317) 687-2221
E-mail: litigation@betzadvocates.com