UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KAREN R. HIRLSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-04699-TWP-MPB |
| | ) | |
| COSTCO WHOLESALE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Costco Wholesale Corporation's ("Costco")
Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56. (Filing No.
44.) Also pending is Plaintiff's Motion for Leave to File Surreply in Opposition to Defendant's
Motion for Summary Judgment. (Filing No. 59). After her employer, Costco, denied her request
for accommodation of her workplace restrictions, Plaintiff Karen R. Hirlston ("Hirlston") filed this
action alleging discrimination and retaliation under the Americans with Disabilities Act ("ADA").
(Filing No. 1.) For the following reasons, the Court **denies** Costco's Motion for Summary
Judgment and **grants** Hirlston's request for leave to file a Surreply.

## I.     BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of
Civil Procedure 56, the facts are presented in the light most favorable to Hirlston as the non-
moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Costco is a chain of membership-only warehouses that retails goods in bulk and provides
services, including an optical department. Hirlston has worked at Costco since December 2009.

([Filing No. 56-12](#).)  In August 2010, Hirlston was promoted to the position of Optical Department Manager at the Castleton location in Indianapolis, Indiana.  *Id.*  During and before her employment with Costco, Hirlston suffered from an array of disabilities.  She was diagnosed with fibromyalgia in 1995.  *Id.* at 2.  Since 2011, she has suffered from four herniated disks, two of which are "pushing on nerve roots."  *Id.*  She has also been diagnosed with spinal canal stenosis, facet disease, and bone spurs, and she has suffered from arthritis since she was 11 years old.  *Id.*  Because of her spinal disabilities and fibromyalgia, Hirlston has used a cane to get around since childhood.  *Id.*  Throughout the years and during bad flare-ups, she has required assistance dressing, stepping into clothing and other everyday activities such as household chores.  *Id.*

Because of her disability, Hirlston was required to abide by stringent physical restrictions at work.  Among other restrictions, she was unable to stand for more than fifteen minutes at a time, walk for more than ten minutes at a time, and was not to push or pull any weight.  ([Filing No. 46-7](#).)  Her doctor indicated that she would need to sit frequently to relieve pain.  *Id.*  She was only permitted to lift or carry up to two pounds below her waist or five pounds above her waist, could only do so "occasionally," and could never lift or carry more weight.  *Id.*  Hirlston's doctor also indicated that she could never bend, stoop, squat, kneel, or climb stairs or ladders.  *Id.*  The duration of each of these restrictions was listed as permanent.  *Id.*

In October 2014, Hirlston reported to Mike Donaldson ("Donaldson"), the warehouse manager at the Castleton Costco warehouse, that her regional manager Scott Francis ("Francis") was discriminating against her on the basis of her disability.  ([Filing No. 56-12 at 2](#); [Filing No. 56-11 at 38-39](#).)  Donaldson contacted his boss, Bill Koza, following Hirlston's report of discrimination.  ([Filing No. 56-11 at 17](#).)  No follow-up investigation occurred because Francis was out on leave at the time Hirlston made the complaint.  *Id.* at 17-18; 39.  Francis' treatment of

Hirlston worsened when she had to use her cane and her disability condition was visible. ([Filing No. 56-12 at 2](#).)

In the summer of 2014, Costco eliminated chairs with backs for their employees, opting to switch to backless stools. *Id.* at 3. In December 2014, Hirlston requested a chair with a back as a reasonable accommodation for her disabilities. *Id.* She provided Donaldson with a note from her doctor.[1] Costco eventually provided Hirlston with a chair, however it was not until seven months after her request. ([Filing No. 56-12 at 3](#).)

In May 2015, Costco announced that there would be a complete remodel of the Optical Department. On May 13, 2015, Costco informed Hirlston that all monitors in the Optical Department would be built into countertops to protect the confidentiality of personal health information. *Id.*; [Filing No. 56-8](#). This change would eliminate the need for seated workstations. ([Filing No. 56-12 at 3](#).) In anticipation of the remodel's incompatibility with her disabilities, Hirlston spoke with Chris Albury ("Albury"), the Administrative Manager, about the remodel. *Id.* Albury advised Hirlston that she would need an accommodation. *Id.*

Following her conversation with Albury, Hirlston spoke separately to Francis, the Regional Manager, and Charise McDonald ("McDonald"), the Assistant Warehouse Manager, about her concerns over the remodel. *Id.* She informed them that her disability made it impossible for her to stand all day and she asked what she should do. *Id.* Both Francis and McDonald told Hirlston that there was no way to accommodate her disability after the remodel. *Id.* Francis did not offer a reason, and McDonald said that her direction came from "corporate." *Id.* at 4. Following this conversation, Hirlston contacted Costco's human resources department and was told that Costco could make an accommodation for her. *Id.* Based on the direction of that department, Hirlston

---

[1] Donaldson does not recall being involved in Hirlston's request for a chair. [Filing No. 56-11 at 14](#).

provided her restrictions to Donaldson and formally requested an accommodation on September 26, 2015. *Id.*

In mid-October 2015, Hirlston was contacted by Frances Parisi ("Parisi") from Rehab West, a company whose services Costco utilizes to facilitate job assessment meetings. *Id.*; Filing No. 45 at 2-3. Parisi asked Hirlston to participate in a conference call with Donaldson and herself to discuss Hirlston's work restrictions. (Filing No. 56-12 at 4.) On November 3, 2015, Hirlston, Donaldson, and Parisi, among others, attended a job assessment meeting the purpose of which was to discuss Hirlston's requested accommodations. *Id.* At this meeting, Hirlston suggested two accommodations—the use of a chair for when she needed to sit, and the use of a grabber for when she needed to pick up documents from low shelves and was unable to stoop or bend to pick them up. *Id.* Hirlston was denied both of those accommodations at the job assessment meeting. (Filing No. 56-11 at 16-17.) Costco denied these proposed accommodations without researching them or speaking to an independent vocational expert or to Hirlston's physician. *Id.* at 24-26; 43-44. Hirlston also explained that she was able to do the job of Optical Department Manager without violating the lifting restrictions placed on her by her doctor. (Filing No. 56-12 at 6.)

After denying her request for an accommodation, Costco placed Hirlston on a forced leave of absence on November 4, 2015. (Filing No. 56-12 at 6.) Donaldson wrote a letter to Hirlston explaining that at the job assessment meeting, "[i]t was determined … that you were unable to perform the essential functions of your position of Optical Manager (full-time), with or without accommodations." (Filing No. 56-4.) "Accordingly, because you cannot return to work with or without accommodation, as a reasonable accommodation, we are placing you on a leave of absence both as a reasonable accommodation and to provide us the opportunity to further explore other potential positions for possible reassignment." *Id.* at 2. Hirlston was not paid during this forced

leave of absence, but she received short-term disability benefits in accordance with a Costco policy.  (Filing No. 56-11 at 37; Filing No. 46-1 at 33-34.)  While she was on this forced leave of absence, Hirlston was depressed and unable to leave her house or get out of bed.  (Filing No. 56-12 at 8.)  Only when Costco rehired her did this depression abate.  *Id.*

In April 2016, Hirlston had another job assessment meeting, this time with William Kaufman ("Kaufman"), the warehouse manager at the new southside Indianapolis Costco location.  (Filing No. 56-12 at 6.)  Hirlston believed the meeting was to discuss a potential job at the new location, but at the meeting she learned there was no such position available for her in April 2016.  *Id.*  Following that meeting, Donaldson sent Hirlston a letter asking her to contact him by May 10, 2016, if she would like to discuss her suitability for other positions at Costco.  *Id.* at 105-107.

On October 11, 2016, Hirlston received an e-mail and a voicemail from Kaufman offering her a job as a hearing aid attendant.  *Id.* at 7, 14.  Hirlston accepted this position on October 17, 2016, via email.  *Id.* at 13.  Six days prior to Hirlston's acceptance of that position, Costco posted a job listing for her old job as Optical Department Manager.  *Id.* at 82-83.  In October 2016, Hirlston returned to work at Costco at the southside Indianapolis location as a hearing aid attendant.  *Id.* at 7.  Hirlston viewed this as a demotion.  *Id.*  As the Optical Department Manager, Hirlston earned approximately $63,000.00 per year, but as a hearing aid attendant, her salary was $21.95 per hour.  *Id.*; Filing No. 56-1 at 60.  She currently works as a hearing aid apprentice, making $23.15 per hour.  (Filing No. 56-12 at 7.)

On December 21, 2017, after exhausting the administrative proceedings available to her by filing a Charge of Discrimination based on disability against Costco with the Equal Employment Opportunity Commission, Hirlston filed the instant Complaint alleging discrimination and

retaliation in violation of the ADA. (Filing No. 1.) Costco filed a Motion for Summary Judgment on April 26, 2019. (Filing No. 44.)

## II. LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation

marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III.   DISCUSSION

In her Complaint, Hirlston alleges two claims, discrimination and retaliation, both in violation of the ADA. (Filing No. 1 at 10-14.) The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability" in job application procedures and in the hiring or advancement of employees. 42 U.S.C. § 12112(a). The ADA also "prohibits employers from retaliating against employees who assert their right under the act to be free from discrimination." *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (citing 42 U.S.C. § 12203(a)). The claims are distinct, and the Court will address them separately.

### A.   Plaintiff's Surreply

As an initial matter, the Court will address Hirlston's Motion for Leave to File Surreply in Opposition to Defendant's Motion for Summary Judgment. (Filing No. 59). A party opposing a summary judgment motion may file a surreply brief only if the movant cites new evidence in the reply or objects to the admissibility of evidence cited in the response. Local Rule 56-1(d). The surreply must be filed within 7 days after the movant serves the reply and must be limited to the new evidence and objections. *Id*. On July 3, 2019, Hirlston filed a timely motion contending that Costco introduced new legal arguments in its Reply when it argued that "Ms. Hirlston implicitly concede[d] that the job description for the Optical Department Manager position is evidence of its essential functions." (Filing No. 59 at 7). Costco has not responded to the Motion or otherwise

opposed the request. Accordingly, the Motion is **granted.** The Court will consider Hirlston's

response to new legal arguments that are contained in the Surreply docketed at Filing No. 59-1.

## B.  Discrimination

To survive summary judgment, a plaintiff alleging discrimination under the ADA must

show there is a genuine issue of material fact as to whether "(1) she is disabled; (2) she is able to

perform the essential functions of the job either with or without reasonable accommodation; and

(3) she suffered an adverse employment action because of her disability." *Majors v. Gen. Elec.

Co.*, 714 F.3d 527, 533 (7th Cir. 2013) (citing *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619,

622 (7th Cir. 2012)). "After an employee has disclosed that she has a disability, the ADA requires

an employer to engage with the employee in an interactive process to determine the appropriate

accommodation under the circumstances." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055,

1061 (7th Cir. 2014) (internal quotation and citations omitted). To comply with an ADA request,

"an individualized inquiry must be made to determine whether a specific modification for a

particular person's disability would be reasonable under the circumstances as well as necessary

for that person, and yet at the same time not a fundamental work alteration." *PGA Tour, Inc. v.

Martin*, 532 U.S. 661, 688 (2001).

Costco does not dispute that Hirlston is disabled or that she suffered an adverse

employment action because of her disability. Its summary judgment brief focuses on the second

prong of the analysis—whether Hirlston was able to perform the essential functions of her job

either with or without a reasonable accommodation. (Filing No. 47 at 16.) Costco argues that,

given the restrictions identified by Hirlston's doctor, no reasonable jury could conclude that

Hirlston was able to perform the essential functions of the Optical Department Manager position

in September of 2015. *Id.* There are two facets to Costco's argument.

First, Costco argues that Hirlston's restrictions prevented her from performing several of the essential functions of her position. *Id.* The written analysis for the Optical Department Manager position stated that during the essential functions of that job, an individual needed to be capable of frequent standing and walking as well as frequently lifting up to ten pounds. (Filing No. 45-1 at 3.) The job also required occasional bending, squatting, kneeling, climbing, and lifting or carrying up to fifty pounds below the shoulder and twenty pounds above the shoulder. *Id.* The restrictions given by Hirlston's doctor never allowed her to bend, squat, or kneel; prohibited her from standing for more than fifteen minutes at a time; and prohibited her from lifting or carrying more than five pounds. (Filing No. 46-7.) Thus, Hirlston was unable to perform the essential functions of the job without an accommodation.

Second, Costco argues that "[n]o reasonable accommodations were identified to allow Hirlston to perform all essential functions of her position" while still adhering to her restrictions. (Filing No. 47 at 18.) At Hirlston's job assessment meeting, Costco considered three potential accommodations: (1) utilizing assistance of other employees when Hirlston needed to lift or carry items that exceeded the five-pound weight restrictions identified by her physician, (2) using a grabber to eliminate the need to bend or stoop, and (3) modification of the design of the Optical Department to allow Hirlston to sit more frequently. (Filing No. 46-8 at 3.) Costco "expressed doubt as to whether a grabber would be feasible, and identified as an area of concern how Hirlston would be able to go from occasional standing to frequent sitting without violating her restrictions against bending or stooping …." (Filing No. 47 at 19.) Costco contends the potential accommodations identified in that meeting would not have allowed Hirlston to continue performing her job as Optical Department Manager. *Id.* Costco also argues the law does not require it to accommodate Hirlston's lifting restriction by utilizing other employees to do the lifting

portion of Hirlston's job.  *Id.* at 20 (citing *Majors v. Gen. Elec. Co.*, No. 1:10-CV-01731, 2012 WL 2912726 at *8 (S.D. Ind. July 16, 2012), *aff'd*, 714 F.3d 527 (7th Cir. 2013)).

In response, Hirlston asserts that Costco failed to engage in the interactive process required under the ADA because it did not consider the accommodations she proposed and it did not offer any proposals of its own.  (Filing No. 55 at 22.)  Hirlston also disputes Costco's contention that she would have been unable to perform the essential functions of the Optical Department Manager job even accommodations had been made.  *Id.* at 25.  She contends that Costco could have allowed her to continue in her position by providing her with a grabber to pick up files stored below waist level and a chair for periodic sitting.  *Id.* at 25-27.  And last, Hirlston argues that lifting objects heavier than five pounds is not an essential function of the Optical Department Manager job, and even if it were an essential function, she could have fulfilled that function without lifting more than the amount specified in her doctor's restrictions.  *Id.* at 27-28.

The key question is whether a reasonable accommodation would have allowed Hirlston to perform the essential functions of her job despite her lifting restrictions.  Costco does not contest that a grabber would have allowed Hirlston to get around her squatting and bending restrictions and a chair would have allowed her to perform her job despite her need to frequently sit.  Rather, it contends that lifting is an essential function of the Optical Department Manager job, and no reasonable accommodation has been identified that would have allowed Hirlston to do the lifting required for the job.

Hirlston does not argue that a reasonable accommodation would have allowed her to circumvent any lifting the job required.  Instead, she argues that lifting is not an essential function of the Optical Department Manager job, and even if it had been, she would have been able to perform that function because any required lifting would not exceed the limits placed on her by

her doctor. ([Filing No. 55 at 27-28](#).) When determining the essential functions of a job, the Court looks at the following categories of evidence:

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for a job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

See 29 C.F.R. § 1630.2(n)(3); *Miller v. Illinois Dept. of Transp.*, 643 F.3d 190, 197-98 (7th Cir. 2011.)

The Job Analysis for the Optical Department manager position states that lifting is an essential function of the job. ([Filing No. 56-7](#).) Although the "Identification of Job Functions" does not mention anything that would necessarily require lifting, the "Strength" table on the second page of the Job Analysis makes clear that during essential functions the Optical Department Manager will be expected to lift or carry up to fifty pounds below the waist occasionally and up to 10 pounds above the waist frequently. *Id.* at 2. The restrictions listed by Hirlston's doctor prohibited her from lifting more than five pounds at any time. ([Filing No. 46-7](#).)

Hirlston overlooks the table on page two of the Job Analysis document and argues under the misunderstanding that lifting is only required for non-essential functions of the Optical Department Manager job. To the contrary, Hirlston argues that in reality, "the Optical Manager did not have to lift any significant weight." ([Filing No. 55 at 28](#).) During her deposition, Hirlston affirmed that when the department received a delivery, it was generally a large box that the deliverer would place on the counter. The large box was full of smaller components, and Hirlston never had to lift the whole box because she could empty it of its small components one by one.

([Filing No. 56-10 at 40](#).) Hirlston said of lifting, "it's not an essential function. One box once a day that anybody in the department can do is not an essential function." *Id.*

There is conflicting evidence as to whether lifting was an essential function of the Optical Department Manager position. Costco has designated the Job Analysis document which explains that essential functions require the Optical Department Manager to lift up to ten pounds frequently and up to fifty pounds occasionally. ([Filing No. 56-7](#).) Hirlston has designated her own affidavit, in which she swore "[l]ifting heavy items was not an essential function of my job." ([Filing No. 56-12 at 6](#).) She offered the same opinion during her deposition. ([Filing No. 56-10 at 40](#).) This conflicting evidence creates a dispute of fact that can only be resolved by weighing competing evidence, which the Court does not do on a motion for summary judgment.

Costco argues Hirlston's sworn statements are insufficient evidence to defeat its summary judgment motion. "In light of the express statements in the written job description, Hirlston's conclusory statement that lifting was not an essential function is insufficient – as a matter of law – to meet her burden to create a question of fact on this point." ([Filing No. 57 at 8](#).) Costco asserts that Hirlston's affidavit "can only create a question of fact to the extent it offers admissible testimony, based on her personal knowledge." *Id.* But Hirlston's statements are based on her own personal knowledge—the knowledge she gained while employed as Optical Department Manager from August 2010 to November 2015. Her statements that lifting is not an essential function of the position do not reflect the Costco's written description of the job, but they reflect her experience serving in that position. Costco faults Hirlston's statements as being "self-serving." *Id.* But the fact that Hirlston's statements serve to advance her own argument is not a reason in itself to disbelieve them.

Costco also argues that courts in the Seventh Circuit will not second-guess the employer's judgment as to the essential functions of a position. *Id.* at 7-8 (citing *Jackson v. City of Chi.*, 414 F.3d 806, 811 (7th Cir. 2005); *Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002)). The Court agrees with that principle, but also notes that courts in the Seventh Circuit must "look to see if the employer actually requires all employees in a particular position to perform the allegedly essential functions." *DePaoli v. Abbott Labs.*, 140 F.3d 668, 674 (7th Cir. 1998) (internal citations omitted). Furthermore, although "the employer's judgment is an important factor, … it is not controlling." *Miller*, 643 F.3d at 198. The designated evidence before the Court in this case creates a question of fact as to whether Costco actually required Hirlston and other Optical Department managers to lift or carry heavy items. Costco acknowledges that "courts should determine the 'fundamental job duties' through reference to the 'employer's judgment,' the 'written job description,' and evidence of specific work experience of prior employees in the position or employees in similar jobs." ([Filing No. 57 at 7](#)) (citing *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015)). In this case, Hirlston's "specific work experience" does not align with the substance of the "written job description," creating a dispute of material fact on the question of whether lifting items that exceeded Hirlston's weight-lifting restrictions was an essential function of her job.

To succeed on her ADA discrimination claim, Hirlston must show "(1) she is disabled; (2) she is able to perform the essential functions of the job either with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability." *Majors*, 714 F.3d at 533. A dispute of material fact precludes judgment on the second element. If this factual dispute were resolved in Hirlston's favor, it is possible that she would have been able to perform the essential functions of the job of Optical Department Manager with reasonable

accommodations. Because Costco failed to negate the second element of Hirlston's claim, and because it did not challenge the first and third prongs, the Court **denies** summary judgment as to Hirlston's discrimination claim.

## C.   Retaliation

The ADA prohibits employers from retaliating against employees who assert their right under the act to be free from discrimination. 42 U.S.C. § 12203(a). Employees are forbidden from retaliating against employees who raise ADA claims regardless of whether the initial claims of discrimination are meritless. *Dickerson* at 601 (citing *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007)). "To establish a case of retaliation under the direct method of proof, a plaintiff must show (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal connection between the two." *Id.* (citing *Casna v. City of Loves Park*, 574 F.3d 420, 426 (7th Cir. 2009)). A plaintiff can also establish a case under the indirect method of proof by demonstrating that he (1) engaged in protected activity; (2) was performing his job satisfactorily, and (3) was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer. *Id.* at 601-02 (citing *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009)). Under either method, once a plaintiff satisfies his initial burden, the burden then shifts to the defendant to present a non-invidious reason for the adverse employment action. *Id.* at 602. If the defendant does that, the plaintiff must demonstrate the defendant's proffered reason was pretextual. *Id.*

In its brief supporting its Motion for Summary Judgment, Costco argues that the basis for Hirlston's retaliation claim "is largely duplicative" of her discrimination claim. (Filing No. 47 at 15.) Costco's brief does not develop a separate argument for summary judgment on Hirlston's retaliation claim. In its reply brief, Costco clarifies that "to the extent evidence establishes that the

determination that Hirlston's restrictions could not be reasonably accommodated was proper—and it does—both of her claims must fail." That argument is meritless for two reasons. First, as the Court explained above, the question of whether Hirlston's restrictions could be accommodated is unresolved due to a dispute of fact. Second, even if the Court had not determined that issues of fact preclude summary judgment on Hirlston's ADA discrimination claim, her retaliation claim is not dependent on the viability of that claim. *Dickerson*, 657 F.3d at 601 ("Employers are forbidden from retaliating against employees who raise ADA claims regardless of whether the initial claims of discrimination are meritless.") For those reasons, the Court **denies** Costco's Motion for Summary Judgment as to Hirlston's ADA retaliation claim.

## IV.   CONCLUSION

For the reasons stated above, Costco's Motion for Summary Judgment (Filing No. 44) is **DENIED** and Hirlston's Motion for Leave to File Surreply in Opposition to Defendant's Motion for Summary Judgment (Filing No. 59) is **GRANTED**.

SO ORDERED

Date: 12/18/2019

_____

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jamie A. Maddox
BETZ & ASSOCIATES
jmaddox@betzadvocates.com

Kevin W. Betz
BETZ & BLEVINS
kbetz@betzadvocates.com

Erin D. Foley
SEYFARTH SHAW LLP
edfoley@seyfarth.com

Amanda A. Sonneborn
SEYFARTH SHAW LLP (Chicago)
asonneborn@seyfarth.com