UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KAREN R. HIRLSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-04699-TWP-MPB |
| | ) | |
| COSTCO WHOLESALE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON PLAINTIFF'S COUNT II CLAIM:
RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

This matter is before the Court on Count II of Plaintiff Karen R. Hirlston's ("Hirlston")

Complaint; her claim against Defendant Costco Wholesale Corporation ("Costco") for retaliation

under the Americans with Disabilities Act ("ADA") (*see* Filing No. 188).  Following a jury trial

on Count I: Hirlston's claims for discrimination (failure to accommodate and disparate treatment)

under the ADA, the jury found in favor of Costco and against Hirlston. It was determined earlier

that Hirlston's retaliation claim would be tried separately to the Court. (Filing No. 136).  The Court

gave Hirlston until July 9, 2021 to brief and submit evidence, if any" and provided Costco "twenty-

one days thereafter to respond." (Filing No. 172 at 2.)[1]  Upon consideration of the evidence

presented at trial and thereafter, and the now-completed briefing the Court issues its Findings of

Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a)(1).  Any finding

---

[1] Hirlston filed a "Reply Brief in Support" on August 6, 2021 (Filing No. 190). Costco moved to strike this brief, arguing that neither the order setting the briefing schedule nor the local rules permitted its filing (*see* Filing No. 191 at 2). And though "a good part of the Reply merely reiterates Hirlston's position" instead of providing new arguments, Costco—in the event "the Court intends to consider Hirlston's Reply"—requested leave to file a surreply to "respond[] to discrete points raised in Hirlston's Reply which Costco did not have the opportunity to address and which require correction." *Id.* at 3. Finally, Costco requested "costs and fees incurred in connection with this Motion to Strike." *Id.* at 4. Upon consideration of this Motion, the Court will **deny** Costco's request to strike the reply brief, **grant** Costco leave to file the surreply (which was submitted at Filing No. 191-1 and which the Court will consider as appropriate), and **deny** Costco's request for costs and fees (Filing No. 191).

of fact that is more properly considered a conclusion of law is adopted as such.  Similarly, any conclusion of law that is more properly considered a finding of fact is adopted as such.

## I.   <u>FINDINGS OF FACT</u>

Hirlston has suffered from a woeful range of disabilities since her youth.  Over twenty-five years ago, in 1995, she was diagnosed with fibromyalgia (Filing No. 187-13 at 2).  In 1998, she was diagnosed with hypothyroidism.  *Id.*  Since 2011, she has suffered from four herniated disks, two of which are pushing on nerve roots.  *Id.*  She has also been diagnosed with spinal canal stenosis, facet disease, and bone spurs, and she has suffered from arthritis since she was eleven years old.  *Id.*  Because of her spinal disabilities and fibromyalgia, Hirlston has used a cane to get around since childhood.  *Id.*

Despite her disabilities, Hirlston was able to provide nearly six years of loyal and exemplary service to Costco—a chain of membership-only warehouses that, among many other things, includes optical departments.  In December 2009, Costco hired Hirlston to work in optical sales and service at the Fortune Park location in Indianapolis, Indiana.  *Id.* at 1.  In August 2010, Hirlston was promoted to the position of Optical Manager at Indianapolis's Castleton Costco location.  *Id.*  Five years into her tenure as Optical Manager, Costco, in May 2015, announced a complete remodel of the optical department that would result in all monitors being built into countertops to protect the confidentiality of customers' personal health information (Filing No. 187-1 at 1).

Knowing that this change would effectively eliminate seated workstations, Hirlston reached out to Costco's human resources department in July 2015 in anticipation of the remodel's incompatibility with her disabilities (Filing No. 187-13 at 2–3).  Eventually, based on direction from the human resources department, Hirlston provided her general practitioner Dr. Rachael Bowles ("Dr. Bowles") with a job description for the Optical Manager role and asked her to

complete Costco's corresponding work restriction form. *Id.* at 3. Later, in September 2015, Hirlston furnished the finalized work restriction form to the Castleton Costco location's Warehouse Manager, *id.* at 3, 5, which indicated that Hirlston

    (1)    could "[n]ever" bend, stoop, squat, or kneel;

    (2)    was "not able" to lift more than five pounds (and no more than two pounds below her waist);

    (3)    could not stand for more than 15 minutes at a time (and would thereafter need to sit frequently); and

    (4)    could not walk for more than 10 minutes at a time (and would then need to sit frequently to relieve pain)

(Filing No. 187-2 at 1–2). Conversely, the pre-existing job description for the Optical Manager position required, among other things, that this employee be able to

    (1)    "Occasionally" ("under 2-1/2 hours") bend, squat, and kneel;

    (2)    "Frequently" ("2-1/2 to 5 hours") carry up to ten pounds;

    (3)    "Frequently" stand; and

    (4)    "Frequently" walk

(Filing No. 189-1 at 2).

In October 2015, Hirlston was asked to participate in a conference call to discuss her restrictions, which conflicted with the requirements of the Optical Manager position and would, in Costco's estimation, impact Hirlston's ability to provide the excellent service to members that it expected (Filing No. 187-13 at 3; Filing No. 183 at 145). During the resultant November 2015 job assessment meeting, Hirlston offered several potential accommodations to allow her to continue as Optical Manager (like using a "grabber" and having access to a sitting station, a polarized screen, and lifting assistance from co-workers), but Costco determined that none of these proposed solutions would permit Hirlston to satisfactorily fulfill the job's duties (Filing No. 187-13 at 3; Filing No. 187-3 at 2–4). Costco was concerned that Hirlston would need to violate some of the

work restrictions outlined by Dr. Bowles to meet the expectations of the role. *Id.* at 3; Filing No. 184 at 31. After determining that were unable to accommodate Hirlston in the Optical Manager position, and without any similar opening to offer her for which she was qualified,[2] Costco placed her on a leave of absence on November 5, 2015 (Filing No. 187-3 at 5; Filing No. 187-4 at 2). The letter placing Hirlston on leave explained that "[i]t was determined . . . that you were unable to perform the essential functions of your position of Optical Manager (full-time), with or without accommodations," and that the leave was instituted to, among other things, "provide us the opportunity to further explore other potential positions for possible reassignment." (Filing No. 187-4 at 1, 2.)

While she was on leave, Costco sent Hirlston open positions (*see, e.g.*, Filing No. 189-2 at 2). After she expressed interest in April 2016 in obtaining a Hearing Aid Attendant position at a new Costco location opening on the southside of Indianapolis, Costco held a meeting with Hirlston to determine if she could perform the essential functions of that role in light of her work restrictions (*see* Filing No. 189-3 at 1–2; Filing No. 187-13 at 5). Eventually, Hirlston—after Costco requested clarification from her health care provider (Filing No. 187-10 at 2–3)—received updated work restrictions from Dr. Bowles several months later on September 30, 2016 (Filing No. 187-5 at 2). According to Dr. Bowles, Hirlston was at that point

> unable to stand longer than 15 minutes at a time. She can walk for up to 10 minutes at a time, but no more than 1 hour total a shift. She needs to sit the majority of her work shift. She cannot lift more than 5 pounds. She walks with a cane. I recommend that she use a chair with a back when she is sitting at work. She cannot push or pull more than 5 pounds occasionally. She can bend and stoop occasionally, but she should not do this more than a few times a shift. She may [] work an 8 hour shift.

---

[2] Costco did identify an opening for "Night Floor Manager," but Hirlston did not "waste time" considering this position because it was "obvious" to her that she could not take on that role due to her work restrictions (Filing No. 187-3 at 4).

*Id.* With these new restrictions, Costco determined that Hirlston could serve as the new southside Indianapolis Costco location's Hearing Aid Attendant and offered her the position on October 10, 2016 (Filing No. 187-6 at 1–2). Hirlston accepted the position a week later, (Filing No. 187-14 at 1), and started in the role on October 31, 2016 (Filing No. 187-13 at 6; *see generally* Filing No. 187-17 at 1–6; Filing No. 129 at 1–2).

By the time Hirlston accepted this role, Costco had already listed her prior position as Optical Manager at the Castleton Costco location as open (Filing No. 187-11 at 1). As the Optical Manager, Hirlston earned about $63,000.00 per year, but as Hearing Aid Attendant, her starting wage was $21.95 per hour (*see* Filing No. 129 at 1). Because of her reduced pay following the job reassignment Hirlston characterizes that she "had been demoted." (Filing No. 187-13 at 6.) When an Optical Manager position opened at the southside Indianapolis Costco location where she worked, Hirlston did not apply (Filing No. 184 at 147).

Hirlston exhausted the administrative proceedings available to her by filing a Charge of Discrimination based on disability against Costco with the Equal Employment Opportunity Commission. Eventually, on December 21, 2017 she sued Costco for Count I: Discrimination and Count II: Retaliation, in violation of the ADA (Filing No. 1). Following a summary judgment determination in Hirlston's favor, a jury trial was held on Hirlston's discrimination claims with the jury returning verdict forms indicating that Hirlston was not "qualified to perform her job as an Optical [] Manager in November 2015." (Filing No. 177 at 1; Filing No. 178 at 1.) The Court then provided the parties with a briefing schedule to argue Hirlston's pending ADA retaliation claim (*see* Filing No. 172 at 2), which is now fully briefed and ripe for the Court's consideration.

## II.    CONCLUSIONS OF LAW AND DISCUSSION

To prove her claim for retaliation under the ADA, Hirlston, through a preponderance of the evidence, "must show that (1) [s]he engaged in protected activity; (2) [s]he suffered a

materially adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 508–09 (7th Cir. 2020), *reh'g denied* (Jan. 7, 2021) (quotation omitted).  Because no one disputes that Hirlston engaged in a protected activity when she requested accommodations, (*see* Filing No. 189 at 13 ("Costco does not deny that Hirlston engaged in ADA-protected activity when she made a request for an accommodation.")), the Court need only decide whether Hirlston suffered any materially adverse action and, if so, whether that action was causally linked with her request for accommodations. These determinations follow in turn.

A.     **Materially Adverse Employment Action**

"[A] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013) (quotation and emphasis omitted). Hirlston contends that her "forced leave of absence" and "demotion" from her Optical Manager position represent materially adverse employment actions against her (Filing No. 188 at 17, 19). These contentions will be discussed separately below.

1.     **Leave of Absence**

First, Hirlston maintains that she suffered an adverse action when she "was placed on a forced leave of absence for nearly a year."  (Filing No. 188 at 17 (citing *Timmons v. General Motors Corp.*, 469 F.3d 1122, 1128 (7th Cir. 2006), for the proposition that "the placement of an employee on involuntary disability leave is an adverse action").) And though Costco maintains that the "forced, involuntary leave of absence" was an accommodation, this action "made it impossible for Ms. Hirlston to perform her job." *Id.* at 18 (citing *Johnson v. Foulds, Inc.*, No. 95 C 5062, 1996 WL 388412, at *5 (N.D. Ill. July 9, 1996), *aff'd*, 111 F.3d 133 (7th Cir. 1997) ("An

accommodation is a change made by the employer that enables a disabled person to carry out the essential functions of her job.").)  Indeed, Costco management indicated that no accommodation was offered in the "Job Assessment Meeting Notes," which also stated that Hirlston would "be placed on a Leave of Absence because Costco is unable to accommodate her restrictions." *Id.* (citing Filing No. 187-3 at 5) (emphasis removed). And at trial, Costco admitted that it "'did not offer [Hirlston] the ability to stay in her job and perform the essential functions with accommodations.'" *Id.* (citing Filing No. 183 at 126).

Costco responds that "granting Hirlston an 11-month leave of absence [ ] provided her with a benefit far beyond what the Seventh Circuit has held is required when – as was the case here – an employee cannot be accommodated in their position and the employee is not qualified for any other available positions." (Filing No. 189 at 15 (citing *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017) ("An employee who needs long-term medical leave cannot work and thus is not a 'qualified individual' under the ADA."))).)  In fact, "[s]eeking to preserve Hirlston's employment and not firing her – though it legally could have – cannot be viewed as a detriment." *Id.* (emphasis removed).  Costco asserts that, "placing Hirlston on leave was not an adverse action, but rather, it was the most beneficent action Costco could take under the circumstances presented, and was consistent with its policy" of providing employees "at least one year" for personal medical leave. *Id.*

Moreover, Costco continues, "the absence of an accommodation 'cannot do "double duty"'" as failure to accommodate claim and retaliation claim." *Id.* (quoting *Avet v. Dart*, No. 14 C 4555, 2016 WL 757961, at *6 (N.D. Ill. Feb. 26, 2016)). Here, Hirlston misguidedly attempts "to distinguish the *identical fact pattern* between her failure to accommodate and her retaliation

claim."  *Id.* at 16 (emphasis in original).  In sum, "courts in this Circuit have made clear" that an action (or inaction) cannot constitute "both" a failure to accommodate and retaliation.  *Id.*

In reply, Hirlston reprises many of the same arguments from her lead brief (*see* Filing No. 190 at 8–10).  She maintains that "'[a] multi-month leave of absence is beyond the scope of a reasonable accommodation under the ADA.'"  *Id.* at 9 (quoting *Severson*, 872 F.3d at 479).  Finally, Hirlston denies that her failure-to-accommodate claim is doing "double duty": Hirlston maintains that she "has never alleged that the forced leave of absence was a failed accommodation.  Instead, she has argued and continues to argue that being placed on a forced leave of absence was an adverse action."  *Id.* at 11.

Hirlston has not shown by a preponderance of the evidence that her leave of absence was a materially adverse employment action. At the outset, Hirlston's reliance on *Severson* is inapposite.  There, an employee *requested additional leave time*, *see id.* at 478 ("Severson asked Heartland to continue his medical leave . . ."), with the Seventh Circuit ultimately determining that the ADA did not compel granting this request, *see id.* at 481 ("[A] long-term leave of absence cannot be a reasonable accommodation.").  In *Timmons*, however, the Seventh Circuit discussed the issue at bar when an employer argued that an on-leave employee—who, importantly, the court assumed was "qualified for the job with or without accommodations"—had not suffered an adverse employment action because he received an equivalent salary. 469 F.3d at 1127, 1128.  The appellate court wrote that this

> argument is a stretch. Money is not the exclusive measure of adverse employment actions. An adverse employment action must be material—more than an inconvenience—but it may take many forms. For example, a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation all may indicate an adverse employment action. The inquiry is contextual and here there is no doubt Timmons's material responsibilities have been diminished.

> Placing Timmons involuntarily on disability leave was an adverse employment
> action.

*Id.* (citations and quotations omitted).  But as described by a sister court in this Circuit—and as implied in *Timmons* by the assumption of "qualified" employee status—"[f]orcing an individual to go on leave *by failing to accommodate his disability* would constitute an adverse employment action." *Moody v. Cook Cty.*, 513 F. Supp. 2d 960, 968 (N.D. Ill. 2007) (citing *Timmons*, 469 F.3d at 1128) (emphasis added).  In other words, an involuntary leave of absence may represent an adverse employment action if it is used to bypass otherwise properly accommodating a *qualified* employee's disability. *Cf. Timmons*, 469 F.3d at 1128 ("[A]ssuming also that Timmons is a qualified individual . . . ").

The evidence shows that Hirlston was not qualified for the Optical Manager position, either with or without the reasonable accommodations she proposed.  As instructed to the jury, "under the ADA, Ms. Hirlston was 'qualified' if she had the skill, experience, education, and other requirements for the job and could do the job's essential functions, either with or without the reasonable accommodation she proposed" (*see* Filing No. 173 at 21). The jury conclusively determined that Hirlston was not qualified, (see verdict form for disparate treatment claim showing that jury determined Hirlston was not "qualified to perform her job as an Optical [ ] Manager in November 2015") Filing No. 177.  The jury conclusively determined the same for her discrimination failure to accommodate claim. Filing No. 178 .  As argued by Costco, "[s]eeking to preserve Hirlston's employment and not firing her—though it legally could have—cannot be viewed as a detriment." (*see* Filing No. 189 at 15).  Accordingly, Costco did not force Hirlston to go on leave—by failing to accommodate her disability per the work restrictions instituted by Dr. Bowles—resulting in an adverse employment action. Instead, this action represented an attempt to provide Hirlston additional time to return to work at the company. Considering the evidence

presented by both parties, the Court finds that the change in Hirlston's employment conditions after Costco placed her on leave was not a materially adverse employment action. *See Moody*, 513 F. Supp. 2d at 968; *Timmons*, 469 F.3d at 1128.

### 2.   **"Demotion"**

Second, Hirlston maintains that she suffered a materially adverse action when she returned to work following the leave of absence and "was demoted to a lower position with significantly lower pay." ([Filing No. 188 at 19.](#)) "'Reassigning a disabled worker to a position that pays less or is otherwise materially less favorable,'" quotes Hirlston, "'could itself give rise to a claim of ADA discrimination.'" *Id.* (quoting *Perez v. Transformer Mfrs., Inc.*, 35 F. Supp. 3d 941, 950 n.7 (N.D. Ill. 2014) and citing *Razote v. Potter*, 833 F.Supp.2d 913, 918–919 (N.D. Ill. 2011) (holding, among other things, that "[a]n adverse action typically involves: (1) a decrease in pay or benefits . . .")). Hirlston anticipates, based on prior filings, that Costco will contend "that a demotion could be a reasonable accommodation when the disabled employee cannot be accommodated by the employer." *Id.* This argument, however, lacks context—in reality, the Seventh Circuit has held that "'if [an employee] could show that she qualified for a vacant position that more closely matched her previous job, the ADA would have obliged the [employer] to offer it to her.'" *Id.* (quoting *Ford v. Marion Cty. Sheriff's Office*, 942 F.3d 839, 855 (7th Cir. 2019)).

In response, Costco argues that "[s]imply because a position pays less does not compel the conclusion that a 'demotion' is an adverse action"; instead, the issue "is whether there was another equivalent position the individual could have performed, with or without a reasonable accommodation." ([Filing No. 189 at 17](#) (citing *Severson*, 872 F.3d at 482 (holding that it is employee's burden to "prove that there were, in fact, vacant positions available at the time . . .").) Here, Costco contends, there is "no dispute that Hirlston was [ ] not qualified for the Optical Manager position, given the jury's verdict," and "Hirlston cites no other equivalent position that

she was qualified to perform and should have been offered instead." *Id.* at 17–18 (emphasis removed).  Costco argues that, "there is no reasonable basis to conclude that offering Hirlston the Hearing Aid Attendant position was an adverse employment action." *Id.* at 18.  Though Hirlston's reply again largely repeats many of her earlier arguments, she remarks that evidence about her "retaliation claim was not heard or decided by the jury." (Filing No. 190 at 12.)

Again, Hirlston has not shown by a preponderance of the evidence that her perceived "demotion" was a materially adverse employment action. Though "[t]here is no question that demotion *may* be a materially adverse employment decision," *Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 876 (7th Cir. 1999) (emphasis added), a demotion or reassignment *cannot* "simultaneously" represent "a reasonable accommodation and an adverse employment action." *Ford*, 942 F.3d at 856.  "A demotion can be a reasonable accommodation"—and thus not an adverse employment action—"when the employer cannot accommodate the disabled employee in her current or prior jobs or an equivalent position." *Id.* at 855. It is the employee's burden to demonstrate "that there is a vacant [equivalent] position in existence for which they are qualified." *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 750 (7th Cir. 2011). And while an employee who does not "even acknowledge a need for a demotion" may face an adverse action, *Hicks v. Forest Pres. Dist. of Cook Cty., Ill.*, 677 F.3d 781, 788 (7th Cir. 2012), such is not the case when an employee actively seeks a "downgrade," *Simpson*, 196 F.3d at 876.

As discussed above, the jury categorically determined that Hirlston was not qualified to perform her job as an Optical Manager under the work restrictions established by Dr. Bowles. The Court reaches that same determination. Accordingly, it was reasonable for Costco to, pursuant to its ADA obligations, attempt to identify another internal position for which Hirlston was qualified. *See Ford*, 942 F.3d at 855.  Recognizing the limited mobility and dexterity possessed by Hirlston,

Costco tried to locate the best positional fit it could for her, ultimately landing on the Hearing Aid Attendant role. Though this is not an "equivalent" role as contemplated by ADA caselaw, Hirlston has not—as is her burden—come forward with other positions that she was qualified to perform and should have been offered instead. *Kotwica*, 637 F.3d at 750; *Severson*, 872 F.3d at 482. And while Hirlston may not have "actively" sought a "downgrade," she pursued the Hearing Aid Attendant position once it became available and once it became clear that she could fulfill its duties under her updated restrictions (*see* Filing No. 189-3 at 1–2; Filing No. 187-13 at 5; Filing No. 187-6 at 1–2; Filing No. 187-14 at 1). Indeed, after she started in this role, Hirlston was "happy" to be back to work and to "still be employed by Costco." (Filing No. 184 at 246–47.) Because Costco could not accommodate Hirlston in her current or prior jobs or an equivalent position, the Court finds that her reassignment to the Hearing Aid Attendant position did not represent an adverse employment action. *See Ford*, 942 F.3d at 855.

**B.     Causal Link**

Even had she suffered a materially adverse employment action, Hirlston has not demonstrated a causal link between that action and her request for accommodations. Hirlston contends that causality can be inferred because her "placement on a forced leave of absence was extremely close in time to her request for accommodations," which, indeed, occurred "the same day the job assessment meeting was held to discuss" that accommodation request (Filing No. 188 at 21 (citing *Lang v. Illinois Dept. of Children and Family Services*, 361 F.3d 416, 421 (7th Cir. 2004) (holding that an "extremely short lapse of time" is a causal link combined with other circumstantial evidence)). Moreover, "Costco refused to consider the reasonable accommodations suggested and requested," which, together with the timing of her leave placement, "is enough to show a causal connection." *Id.* Finally, by stating "at the trial" that it "stands behind the decisions of its warehouse managers," Costco suggests that it supports decisions whether they "are wrong or

right." *Id.* at 22 (citing Filing No. 185 at 103 ("[T]he company believes in standing behind its managers and the decisions that they make . . .")). To Hirlston, this blind corporate support represents additional evidence of causality and "further evidence of Costco's retaliation against" her. *Id.*

Costco responds first that "timing alone is 'rarely enough' to establish a causal connection for a retaliation claim." (Filing No. 189 at 19 (quoting *Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 633 (7th Cir. 2020).) Here, the timing is not suspect because "after meeting with her on November 3, 2015 and consistent with its job accommodation process, it was clear that Hirlston could not perform her essential job functions with or without accommodations." *Id.* The inability to accommodate Hirlston, Costco maintains, drove the decision to place her on leave, "not some spurious notion of retaliation." *Id.* (citing *Kotaska*, 966 F.3d at 633 (noting absence of any circumstantial evidence of retaliation; evidence showed employee was terminated because her "restrictions had not changed enough since her first dismissal," and that "was the non-retaliatory reason for the second [dismissal]")). Costco also notes that Hirlston "makes no attempt to infer any retaliatory cause to" her "demotion" because "there is none." *Id.* at 20. In fact, "it strains credulity that it would continue sending her job openings, proactively hold a second Job Accommodation Meeting with her, and seek to return her to work." *Id.* Finally, "a statement made during closing argument" by counsel—that Costco stands behind its managers—"is irrelevant to the issue of causation" and should not be considered "evidence" anyway. *Id.* at 21.

In reply, Hirlston argues that "temporal proximity" supports causality and that Costco "never had any intention of returning [her] to her position as the Optical [ ] Manager" because that position "was posted by Costco . . . five (5) days prior to Ms. Hirlston's acceptance of the new position." (Filing No. 190 at 13–14.) She contends that had she "not requested reasonable

accommodations, she never would have been placed on a forced leave of absence and demoted." *Id.* at 15.

Hirlston has not shown by a preponderance of the evidence that any materially adverse employment action was causally connected to her request for accommodations. In retaliation claims, "causation can be established by circumstantial evidence, which includes, for example, suspicious timing, a pretextual explanation for the termination, and evidence that similarly situated employees were treated differently.  This list is not exclusive; the plaintiff can point to any other evidence from which an inference of discriminatory intent might be drawn." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (quotations and citations omitted).  Here, Hirlston primarily relies on the timing of her leave placement as well as Costco's statement in closing argument that it generally "stands behind" the decisions of management.

As for timing, that Costco would place Hirlston on leave immediately after determining that there were no accommodations that could be put into place to qualify her to perform the duties of her job consistent with the work restrictions mandated by Dr. Bowles is not evidence of retaliation.  *Cf. Basith v. Cook Cty.*, 241 F.3d 919, 933 (7th Cir. 2001) ("Cook County had provided legitimate non-retaliatory reasons for requiring Basith to take medical leave and for refusing to schedule him for overtime and holiday work.  In particular, Basith could not perform the essential functions of his job.").  As for the statement by counsel during closing argument, as noted by Costco, this is not to be considered evidence, so the Court need not consider it (*see* Filing No. 173 at 9 (instructing that "the lawyers' opening statements and closing arguments to you are not evidence")).  Without the non-evidence and non-sequitur of Costco's "standing behind" management, Hirlston has provided no "other evidence that supports the inference of a causal link."

*Lang*, 361 F.3d at 419; *see Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011) ("[S]uspicious timing alone is almost always insufficient.").

The ADA's "retaliation provision is not limited to protecting qualified individuals." *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 243 (7th Cir. 2018) (emphasis removed). But a plaintiff "may not make an end-run around the 'qualified individual' requirement by simply reframing a discrimination or accommodation claim as one for retaliation." *Id.*; *see also* Filing No. 191-1 at 2 ("When Hirlston says Costco provided her with 'no' accommodation, that is a claim alleging a failure to accommodate—that she was denied an accommodation—under the ADA. Hirlston is arguing semantics to detract from the truth: her ADA failure to accommodate and ADA retaliation claim are premised on the same facts."). In *Rodrigo*, for example, one "essential function" for third-year medical residents employed at a hospital included passing a certain test to advance to the next year of their program.  879 F.3d at 239.  The Seventh Circuit held that a medical resident could not claim retaliation by the hospital when it refused to waive the requirement that he pass that test.  *Id.* at 243 (holding that the "alleged 'retaliation' was simply an enforcement of its [test] policy, and the retaliation claim is thus a collateral attack on the legitimacy of that requirement").

Here, the jury conclusively determined that Hirlston was not "qualified to perform her job as an Optical [ ] Manager in 2015." (Filing No. 177 at 1; Filing No. 178 at 1.) The Court concurs. It was Hirlston's inability to serve in this position in harmony with her work restrictions that caused any purported adverse action she faced, not her exercise of a protected activity. *See Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 602 (7th Cir. 2011) ("[I]t was Dickerson's work performance that was causally connected to his termination."); *Stevo v. CSX Transp., Inc.*, 151 F.3d 1033 (7th Cir. 1998) ("Stevo has failed to establish a causal connection

between Stevo's ADA complaint and the failure to promote him because he has not shown that 'but for' his complaint CSXT would have hired him. CSXT has pointed to an eminently justifiable reason for its decision: Stevo was not qualified for the job.") (citations omitted).

Moreover, Hirlston fails to point to any circumstantial evidence demonstrating that she was placed on leave or in a new position because she requested accommodations. Instead, as discussed above, the jury determined (and the evidence supports) that Hirlston was not qualified to perform her job duties (*see* Filing No. 177 at 1; Filing No. 178 at 1). The evidence represents a legitimate catalyst for Costco's actions (*see* Filing No. 191-1 at 2 ("Costco placed Hirlston on a leave of absence, and returned her to work in the Hearing Aid Attendant position, in satisfaction of its duties under the ADA to provide Hirlston with accommodations in line with her restrictions.")). For this reason too, the Court determines that Costco did not retaliate against Hirlston in violation of the ADA.[3]

## III.   CONCLUSION

Based upon the foregoing findings of fact and conclusions of law, the Court concludes that Hirlston has not shown by a preponderance of the evidence that Costco retaliated against her in violation of the ADA. Additionally, the Court **GRANTS in part and DENIES in part** Costco's Motion to Strike, (Filing No. 191), as discussed more in depth in this Entry's first footnote.  As this resolves all the claims in Hirlston's suit, Final Judgment shall issue in a separate Entry.

**SO ORDERED.**

Date:  8/19/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

---

[3] Because the Court has determined that Costco did not retaliate against Hirlston in violation of the ADA, it need not proceed to the issue of damages.

DISTRIBUTION:

Kevin W. Betz
BETZ & BLEVINS
kbetz@betzadvocates.com

Sara Eber Fowler
SEYFARTH SHAW LLP (Chicago)
sfowler@seyfarth.com

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

Chad Harrison Holler
BETZ & BLEVINS
choller@betzadvocates.com

Courtney E. Endwright
BETZ & BLEVINS
cendwright@betzadvocates.com

Jamie A. Maddox
BETZ & ASSOCIATES
jmaddox@betzadvocates.com

Erin D. Foley
SEYFARTH SHAW LLP
edfoley@seyfarth.com

Kyla J. Miller
SEYFARTH SHAW LLP (Chicago)
kjmiller@seyfarth.com